The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act, and the employment relationship existed between the parties at all relevant times.
2. The defendant is a duly qualified self-insured with Constitution State Service Company as the servicing agent.
3. The plaintiff's average weekly wage was $321.62, which yields a compensation rate of $214.42, according to the Form 22 which was received.
4. The issues for determination are:
 a. Whether the plaintiff contracted a compensable occupational disease; and if so, to what benefits she may be entitled;
 b. Whether authorization should be given for surgical procedures for bilateral carpal tunnel release; and
c. Which physician is authorized as plaintiff's treating physician.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a forty-seven year old female who had been employed with defendant since August 12, 1986.
2. Plaintiff's duties involved laying sleeves on a conveyor belt which transported the sleeves into a machine which sewed the sleeves in place on shirts.
3. In September of October of 1992, the plaintiff was using a hand truck to move a box of sleeves, and she began to experienced pain in her right shoulder. The plaintiff has not used the hand truck since that time.
4. On October 21, 1992, the plaintiff was seen by Dr. Tolbert, upon referral by the plant nurse, for complaints regarding her right shoulder. Plaintiff was seen for follow-up on October 28, 1992, at which time Dr. Tolbert noted that her shoulder had improved, although her hand would jerk at times.
5. The plaintiff began to experience swelling, aching and numbness in her right forearm about a month after the shoulder injury or early in 1993.
6. On January 5, 1993, the plaintiff complained of right hand pain to the plant nurse.
7. On January 14, 1993, the plant nurse referred plaintiff to Dr. Tolbert, who diagnosed plaintiff as having tendonitis. At a follow-up visit in January 21, 1993, Dr. Tolbert noted questionable adhesive capsulitis versus impingement syndrome. He recommended an evaluation by an orthopedic surgeon.
8. The plaintiff was seen by Dr. Stephen Naso, an orthopedic surgeon and hand specialist, on February 11, 1993. Dr. Naso noted a history of the problem since October. A videotape of plaintiff's job was reviewed by Dr. Naso, following which he opined that there was no evidence of the job being the cause of the symptoms. He further noted that a shoulder x-ray reported plaintiff's problem as being an erosive arthritis.
9. The plaintiff continued to perform her regular work and next sought medical care on or about September 23, 1993, when her family doctor, William Renfroe, referred her to Dr. Edward G. Hill, Jr., a neurologist.
10. The plaintiff presented to Dr. Hill with complaints of pain in both arms, with the right being worse, and which pain would awaken her at night. Dr. Hill noted that plaintiff had not missed work. Although Tinel's and Phalen's signs were positive in the right arm, nerve studies were normal. Dr. Hill prescribed wrist splints and anti-inflammatory medications.
11. On November 16, 1993, the defendant referred plaintiff to Dr. Naso for further evaluation, at which time he noted that she did have mild carpal tunnel syndrome in the right hand, and x-rays of the right shoulder showed changes of arthritis involving the AC joint and the greater tubercle of the humerus. Dr. Naso referred plaintiff to neurosurgeon Dr. Lassiter for an evaluation. Dr. Naso advised that conservative treatment be pursued. On March 15, 1994, Dr. Naso found plaintiff to be at maximum medical improvement and was released to return to her regular work. Both Dr. Naso and Dr. Lassiter have advised that surgery was not recommended in her case.
12. At no time did the plaintiff request authorization from the defendant to seek treatment from either Dr. Renfroe and Dr. Hill.
13. The plaintiff did not have any treatment for her wrists from March of 1994 until she was seen by Dr. Cregan in 1995. Dr. Cregan advised the plaintiff that surgery was not recommended in her case.
14. Both Dr. Naso and Dr. Hill have opined that plaintiff's arthritis certainly could be the cause of her carpal tunnel syndrome.
15. Dr. Hill has further opined plaintiff's swelling in her extremities on or about October of 1993, as a result of her need to reduce dietary salt, would contribute to her carpal tunnel syndrome.
16. The plaintiff complained of swelling in her hands and feet as early as June 29, 1992. Plaintiff's family physician related the swelling to salt in her diet and to plaintiff's obesity.
17. While Dr. Cregan opined that plaintiff's condition was related to her job, the greater weight of the evidence in the record suggests that plaintiff's condition is not causally related to her job. Specifically, the OSHA reports from defendant-employer demonstrate no cases of carpal tunnel syndrome over the past six years in any employee in the auto sleeves operator job.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
The plaintiff has failed to carry the burden of proof to establish that she has developed an occupational disease within the meaning of N.C. GEN. STAT. § 97-53(13). Specifically, the plaintiff has failed to establish that her condition was due to causes and conditions which are characteristic of and peculiar to her employment, but excluding all ordinary disease of life to which the general public is equally exposed outside of the employment.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
 3. Defendants shall pay the following expert witness fees: $225.00 to Dr. Cregan; $215.00 to Dr. Hill, and $200.00 to Dr. Naso.
FOR THE FULL COMMISSION
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
(see CONCURRENCE below)
S/ ________________________ J. RANDOLPH WARD COMMISSIONER
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/mj 6/6/96